UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

LAPOLLA INDUSTRIES, INC.,

MEMORANDUM AND ORDER

Plaintiff,

CV 12-5910

-against-

(Wexler, J.)

ASPEN SPECIALTY INSURANCE COMPANY,
ASPEN SPECIALTY INSURANCE MANAGEMENT,
INC.,

Defendants.

------------------------------------------------------------------------X

APPEARANCES:

BAKER & HOSTETLER, LLP
BY: GEORGE A. STAMBOULIDIS, ESQ.
45 Rockefeller Plaza
New York, New York   10111
Attorneys for Plaintiff

HOOVER SLOVACEK LLP
BY: MATTHEW A. KORNHAUSER, ESQ., DYLAN B. RUSSELL, ESQ.
      MITCHELL A. WARD, ESQ., SIDNEY WATTS, ESQ.
5847 San Felipe Suite 2200
Houston, Texas 77057
Attorneys for Plaintiff

GREENBAUM ROWE SMITH RAVIN DAVIS & HIMMEL, LLP
BY: ROBERT M. GOODMAN, ESQ., CLIFFORD B. KORNBREK, ESQ.
75 Livingston Avenue Suite 301
Roseland, New Jersey 07068
Attorneys for Plaintiff

GOLDBERG SEGALLA LLP
BY: RICHARD J. AHN, ESQ., JOSEPH A. OLIVA, ESQ.
780 Third Avenue Suite 3100
New York, New York   10017
Attorneys for Defendants

1

WEXLER, District Judge

This is a declaratory judgment action brought by Plaintiff, Lapolla Industries, Inc. ("Plaintiff" or "Lapolla"), seeking a judgment declaring that the Defendant insurers are obligated to defend and indemnify Plaintiff in connection with a personal injury action now pending in this court (the "Underlying Action"). Presently before the court is the motion of Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint on the ground that insurance policies they issued do not cover the claims made in the Underlying Action. For the reasons that follow, the motion is granted.

## BACKGROUND

### I. The Parties

Lapolla, a Delaware corporation with its principle place of business in the state of Texas, is engaged in the manufacture and distribution of spray foam insulation. Defendant Aspen Specialty Insurance Company is a North Dakota Corporation. Aspen Specialty Insurance Management, Inc. is a Massachusetts corporation. Both Defendants, referred to herein collectively as "Aspen," maintain a principle place of business in Boston, Massachusetts. They are subsidiaries of Aspen Insurance Holdings Limited, the ultimate parent corporation of a group engaged in the global specialty insurance and reinsurance businesses.

### II. Policies and the Relevant Exclusion

The policies at issue here are: (1) a commercial general liability ("CGL") policy of insurance (the "Primary Policy") and (2) an excess policy of insurance (the "Excess Policy") (collectively the "Policies"). The Policies cover the period of November 11, 2011 through November 11, 2012, and provide insurance for general liability claims made against Lapolla that

2

may arise throughout the world. Both policies speak expressly, as discussed in greater detail below, to the exclusion of coverage with respect to claims arising out of exposure to, or requiring clean-up of "pollution" or "pollutants."

The Primary Policy contains an endorsement modifying coverage for damage allegedly attributable to "pollution." This endorsement, commonly referred to as a "total pollution exclusion" clause, states that coverage is not provided for:

Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";
. . .

The Primary Policy defines the term "pollutants" to mean:

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

By its terms, the Excess Policy provides coverage subject to the terms, conditions and exclusions of the Primary Policy. Additionally, the Excess Policy contains its own specific exclusion with respect to pollution, stating that, whether or not an underlying policy affords coverage, it excludes coverage for:

A. Pollution, [including any]

1. Claim, suit, demand of Loss that alleges injury or damage that, in any way, in whole or in part, arises out of, relates to or results from any:

a. Request, demand, order or statutory or regulatory requirement, or any other action authorized or required by law, that any Insured or others investigate, abate, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of, or in any way respond to, or assess the effects of Pollutants as well as any Loss, sanctions arising out of, relating thereto or resulting therefrom.

The Excess Policy contains the same definition of "pollutants" as the Primary Policy.

The Policies were issued to Lapolla through CRC Insurance Services, Inc., a broker for Defendants that is located in Birmingham, Alabama. Lapolla, identified as the named insured party with a Houston, Texas mailing address, made payment on the Policies to CRC. Each of the Policies contain language referencing the laws of the State of Texas. That language advises Lapolla, inter alia, that the insurer is not authorized to transact business within the State of Texas, and advising the insured as to the procedure for obtaining information about the insurer through the Texas Department of Insurance. Neither of the Policies contain a choice of law provision.

III. The Underlying Action

The allegations of the action for which insurance coverage is sought are important to determine the coverage question at issue. The court therefore details below the allegations of the Underlying Action, which was commenced against Lapolla in this court, and assigned to a different District Judge, on September 14, 2012, by Neil and Christina Markey (the "Markeys") (hereinafter the "Markey Lawsuit"). The Markey Lawsuit, styled as a class action, seeks compensation for personal injury and property damage allegedly attributable to the application of Lapolla's spray polyurethane foam ("SPF") insulation product.[1] The action alleges that Lapolla's

---

[1] The Markey lawsuit also alleges claims against a New York Corporation known as Delfino Insulation Company. Inc. ("Delfino"). Those claims are asserted on behalf of a sub-class of Plaintiffs. Because this insurance coverage declaratory action is concerned with policies issued to Lapolla, it does not pertain to the claims alleged against Delfino.

4

SPF is hazardous and defective because after application, the product emits an odor associated with the "off-gassing" of hazardous compounds and toxins. Specifically, the Markeys allege that SPF is a polyurethane open cell semi-rigid foam created by the chemical reaction of two sets of highly toxic compounds that are brought together in a spraying apparatus. While the resulting foam is intended to become inert and non-toxic after application, the Markey Lawsuit alleges that the toxicity remains. This toxicity is alleged to be released into the environment because the SPF allegedly continues to "off-gas" after installation. The off-gassing is alleged to create irritants that cause headaches and other neurological issues, as well as eye, ear, nose, throat and other respiratory irritations.

The Markey Lawsuit describes in detail the identity of the toxic chemicals allegedly off-gassed after installation of Lapolla's product. It concludes that as a result of "exposure to the toxins, carcinogens, and VOC's [volatile organic compounds] off-gassed by Lapolla's SPF after installation," Plaintiffs suffered personal injury. Plaintiffs and the class members' "structures, personal property, and bodies" are alleged to have been "exposed to Defendant Lapolla's problematic SPF and the harmful effects of the gases it emits long after installation." Lapolla is alleged to have knowingly continued to manufacture and distribute its product, which was both unfit for its intended purpose, and unreasonably dangerous because of the damage resulting from the post-installation off-gassing. The harmful effects of the gas emitted by the product are alleged to be causally linked to past and future personal and economic injuries to the Markeys and the proposed plaintiff class.

The Markeys state the foregoing facts in support of state law causes of action alleging negligence, strict liability, breach of warranty, unjust enrichment and violation of the New York

State consumer protection legislation contained in Sections 349 and 350 of the New York State General Business Law. The Markey Lawsuit seeks compensatory and punitive damages as well as injunctive relief in the form of repair and remediation of homes, rescission of contracts, and an order that corrective notices to be sent to homeowners. Plaintiffs also seek to have Lapolla bear the cost of continued testing and monitoring of the homes of class members, as well as their continuing health.

IV.    The Disclaimer of Coverage

Aspen was advised of the Markey Lawsuit in October of 2012. On October 24, 2012, Aspen denied coverage under the Primary Policy pursuant to, inter alia, the total pollution exclusion clause referred to above. Coverage under the Excess Policy was denied pursuant to the language incorporating the exclusion of the Primary Policy, as well as the pollution exclusion language contained in the Excess Policy. Lapolla requested reconsideration of the decision denying coverage and Aspen reiterated the denial. Aspen did, however, offer to provide a conditional defense to Lapolla. That defense was conditioned on Lapolla's agreement to litigate a declaratory judgment action as to coverage in a Texas court. Lapolla did not agree to participate in such an action and, instead, instituted this lawsuit.

V.    The Motion to Dismiss

Aspen moves to dismiss on the ground that it properly denied coverage based upon the pollution exclusion clauses. The issue of whether coverage is excluded in this case depends upon state law interpreting such clauses. As noted, the Policies do not contain a choice of law provision. Both parties recognize: (1) that the court must apply the law of the forum state, i.e. New York, to determine which law to apply and (2) that upon such application, this matter will

be governed either by the laws of the State of New York or those of the State of Texas.

Aspen moves to dismiss on the ground that the Policies are governed by Texas law which, according to Aspen, holds unequivocally that the claims alleged in the Markey Lawsuit fall within those excluded from coverage by the pollution exclusion clauses. Lapolla seeks to have New York law apply, which in Lapolla's view, would not exclude coverage for the claims alleged in the Markey Lawsuit. In support of its argument, Lapolla argues that there is no actual conflict between the laws of Texas and New York and therefore, principles of conflicts of laws dictate that New York law govern the coverage issue. Lapolla argues further that even if there is a conflict between the laws of New York and Texas, New York law should nonetheless be chosen as the state law to apply.

The court turns now to outlining relevant conflict of laws, and state law principles and to decide the merits of the motion.

DISCUSSION

I.     <u>Legal Principles</u>

     A.     <u>Standards on Motion to Dismiss</u>

To survive a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure a plaintiff is required to allege facts to state a claim to relief that is "plausible on its face." <u>Starr v. Sony BMG Music Entertainment</u>, 592 F.3d 314, 321 (2d Cir. 2010), quoting, <u>Bell Atlantic v. Twombly</u>, 550 U.S. at 570; <u>Davis v. NYC Dept. of Educ.</u>, 2012 WL 139255 *3 (E.D.N.Y. 2012). A claim will be deemed to have "facial plausibility" where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

7

When deciding a Rule 12(b)(6) motion, the court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." Davis, 2012 WL 139255 *3, quoting, McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The court's consideration is limited to: "(1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents that are "integral" to the complaint. Id., quoting, Corbett v. eHome Credit Corp., 2010 WL 1687704 *2 (E.D.N.Y. 2010); see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also McCarthy, 482 F.3d at 191 (court deciding motion to dismiss considers "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

B.     Common State Law Standards for Interpretation of Insurance Policies

The question of whether there is an ambiguity in an insurance policy is considered to be a question of law by the courts of both the states of Texas and New York. See Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642, 646 (5th Cir. 2008) (applying Texas law); Nationwide Mut. Ins. Co. v. CNA Ins. Co., 729 N.Y.S.2d 760, 762 (2d Dep't. 2001) (applying New York law); see also Vam Check Cashing Corp. v. Federal Ins. Co., 787 F. Supp.2d 264, 267-78 (E.D.N.Y. 2011) (interpretation of insurance policy presents question of law appropriately decided on summary judgment). If a clause is clear in its denial of coverage, judgment is properly entered in favor of the insurer. If, however, the clause is determined to be ambiguous, further findings are necessary. In such a case, both Texas and New York courts construe the clause strictly against the insurer. See Clarendon America Ins. Co. v. Bay, Inc., 10 F. Supp.2d 736, 741

8

(S.D. Tex. 1998) (applying Texas law); <u>Westview Associates v. Guaranty Nat. Ins. Co.</u>, 717 N.Y.S.2d 75, 78 (2000); <u>Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.</u>, 47 F.3d 34, 37 (2d Cir. 1995) (applying New York law).

II.     Applicable Conflicts of Law Principles

It is well settled that in a diversity action this court must look to the law of the State of New York to determine the choice of law issue. <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 311 U.S. 487 (1941); <u>Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 544 (2d Cir. 1999). Pursuant to that law, the court must make a threshold determination as to whether there is in fact, an actual conflict between the laws of the states at issue. <u>Harris v. Provident Life and Acc. Ins. Co.</u>, 310 F.3d 73, 81 (2d Cir. 2002); <u>Narragansett Elec. Co. v. American Home Assur. Co.</u>, 2013 WL 432610 *7 (S.D.N.Y. 2013); <u>Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC</u>, 2009 WL 137055 *4 (S.D.N.Y. 2009). If no such conflict exists, the court need not engage in any further analysis leading to the choice of a particular state law.  Instead, New York law will apply. If, on the other hand, a conflict does exist, New York courts must consider the rules and factors described below to determine the appropriate law to apply.

Generally, New York courts apply a "center of gravity" or "grouping of contacts" approach to choice of law determinations. <u>Lumbermens Mutual</u>, 2009 WL 137055 *4 . In the specific context of insurance contracts, the law to be applied is generally the law of the state which the parties understood to be the location of the insured risk. <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 618 N.Y.S.2d 609, 613 (1994). That state law applies unless, with respect to the issue involved, the principles stated in Section 6 of the Restatement (Second) of Conflicts ("Section 6") point the court in a different direction. <u>See id</u>. at 613. The principles set forth in

9

Section 6 are general choice of law principles, including, _inter alia_, the protection of expectations, "certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied." Restatement (Second) of Conflicts, §6.

With these conflicts of laws principles in mind, the court turns to determine first, whether there is a conflict between the laws of the States of Texas and New York as to application of the total pollution exclusion clause. Next, if necessary, the court will determine which state law to apply.

III.    Conflict Between Texas and New York Law

The highest courts of the States sf Texas and New York, as well as Federal Courts sitting in diversity, have had occasion to construe the application of pollution exclusion clauses in circumstances similar to those presented here. Specifically, courts have been called upon to determine whether coverage is excluded for injuries alleged to arise from exposure to pollutants in contexts other than traditional widespread environmental pollution. This issue turns on whether the court interprets the pollution exclusion clause as clear on its face, or ambiguous.

In _National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc._, 907 S.W.2d 517 (Tex. 1995), the Texas Supreme Court considered the application of a broad pollution exclusion clause contained in a CGL policy of insurance. The court referred to the clause as an "absolute pollution exclusion," which excluded coverage for personal injury or property damage "arising out of the actual or threatened discharge, dispersal, release or escape of pollutants, anywhere in the world." _National Union_, 907 S.W.2d at 519. The exclusion broadly defined "pollutants" to include, _inter alia_, "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

10

vapor, soot, fumes, acids, alkalis, chemicals and waste material." Id.

The underlying lawsuit in National Union followed an accident that caused the rupture of a tank containing hydroflouric acid. The issue was whether claims arising out of exposure to the ensuing acid cloud were within the pollution exclusion clause. National Union, 907 S.W.2d at 519. The Texas Supreme Court interpreted the exclusion language as completely unambiguous, and granted the insurance company's motion to dismiss the coverage action. There, the Texas court focused on the clause's broad definition of the term "pollutant," as described above. Holding that the policy unequivocally denied coverage for damage attributable to pollutants, and that the hydroflouric acid cloud was within the plain definition of that term, the court held that extrinsic evidence as to the parties' intent was unnecessary to consider. Thus, the Texas Supreme Court concluded that the trial court properly dismissed the insured's case for coverage. Id. at 521-22.

The National Union court recognized the conflict among courts regarding construction of pollution exclusion clauses, but noted its agreement with those courts holding that such clauses are "clear and unambiguous," stating that "[t]he pollution exclusion is just what it purports to be – absolute." Id. at 522, quoting, Alcolac Inc. v. California Union Ins. Co., 716 F. Supp. 1546, 1549 (D. Md. 1989). Thus, the court placed Texas squarely within the camp holding pollution exclusion clauses to be clear, unambiguous and properly applied in non-traditional environmental pollution cases.

Similarly, in Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc., 112 F.3d 184 (5th Cir. 1997), the issue was whether a claim alleging injuries attributable to an accidental discharge of phenol gas into a worker-occupied tent was excluded from coverage by a

pollution exclusion clause. While broadly worded, the clause at issue in Certain Underwriters differed from that at issue in National Union. Specifically, while the clause at issue in Certain Underwriters, excluded coverage for injuries alleged to have been "directly or indirectly caused by or arising out of, inter alia, "pollution," it did not define the term "pollutant." Certain Underwriters, 112 F.3d at 186.

Guided by the Texas Supreme Court decision in National Union, and a prior Fifth Circuit opinion denying coverage for injuries alleged to have been caused by radioactive waste, see Constitution State Ins. Co. v. Iso-Tex Inc., 61 F.3d 405 (5th Cir.1995), the Court of Appeals for the Fifth Circuit affirmed the District Court's grant of summary judgment, and held that coverage was properly denied. Importantly, despite the policies' use of the undefined term "pollution," the court in Certain Underwriters rejected the argument that pollution exclusion clauses apply only to "instances of traditional environmental pollution," and not to a "simple workplace accident." Certain Underwriters, 112 F.3d at 187. Instead, the court held that the clause precludes coverage even in the absence of "widespread environmental harm." Id.

Like the court in National Union, the Fifth Circuit in Certain Underwriters noted that jurisdictions differ as to whether workplace accidents fall within the pollution exclusion clause, but again, placed Texas among those states holding the clauses to be unambiguous in barring coverage. Id. at 188 (noting the National Union court's holding that pollution exclusion clauses "unequivocally deny coverage for damage resulting from pollutants, however the damage is caused," quoting, National Union, 907 S.W.2d at 522); see also Noble Energy, Inc. v. Bituminous Cas. Co., 529 F.3d 642, 646 (5th Cir. 2008) (noting that Texas courts consistently hold total pollution exclusion clauses to be unambiguous); Clarendon, 10 F. Supp.2d at 744

(granting summary judgment to insurer and holding pollution exclusion clause unambiguously bars coverage for injuries allegedly attributable to inhalation of fumes arising from cement product); Zaiontz v. Trinity Universal Ins. Co., 87 S.W.3d 565, 573-74 (Tex. App. San Antonio 2002) (pollution exclusion clause bars coverage for injuries suffered by worker as a result of inhalation of spray product used to clean smoke-damaged airplane).

Unlike cases decided under Texas law, New York courts have long held the total pollution exclusion clause to be ambiguous when applied outside of the context of lawsuits arising from traditional environmental pollution. For example in Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F.3d 34 (2d Cir. 1995), the Court of Appeals for the Second Circuit, applying New York law, held that a pollution exclusion clause did not clearly apply to bar coverage for an action in which the underlying plaintiffs alleged carbon monoxide poisoning caused by a faulty heating and ventilation system. Id. at 37. There, the court held the clause ambiguous despite both: (1) the broad nature of the clause, which applied to personal and property injury claims arising out of the "actual, alleged or threatened discharge, dispersal, release or escape of pollutants," and (2) the equally broad definition of pollutant which included, like the clause at issue in National Union, "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste . . . ." Id. at 36. In a holding directly opposite to that of the Texas court in Certain Underwriters, the New York court in Stoney Run held the pollution exclusion clause to be ambiguous when applied to actions other than those arising from traditional environmental pollution. Stoney Run, 47 F.3d at 37; see also Karroll v. Atomergic Chemetals Corp., 600 N.Y.S.2d 101, 102 (2d Dept. 1993) (pollution exclusion clause "reasonably interpreted to apply only to instances of environmental

13

pollution").

In Belt Painting Corp. v. TIG Ins. Co., 763 N.Y.S.2d 790 (2003), the New York Court of Appeals spoke clearly on this issue, holding the clause to be ambiguous, and therefore in need of interpretation in the context of a personal injury lawsuit arising from the use of chemicals in the ordinary course of the insured's business. There, the court held that the total pollution exclusion clause was ambiguous when applied to a case alleging injury attributable to a worker's inhalation of paint and solvent fumes in an area where he was performing stripping and painting work. Belt Painting, 763 N.Y.S.2d at 792.

Similar to the comment by the Texas Supreme Court noting disagreement among jurisdictions, New York's highest court stated that application of the clause has "engendered litigation, and divergent results." Id. at 793. The New York court, however, held the clause to be ambiguous in non-environmental discharge cases, and that it did not therefore clearly apply to bar coverage. Unlike the highest court in Texas, which emphasized the plain language definition of "pollutant," the New York Court of Appeals focused on the history of the clause, and held that it could not be applied to bar coverage where injuries are alleged to stem from exposure to paint and solvent fumes. Id. at 795.

Following the decision in Belt Painting, New York courts have held consistently that the pollution exclusion clause is ambiguous when applied outside of the traditional environmental pollution scenario. E.g., Ocean Partners, LLC v. North River Ins. Co., 546 F. Supp.2d 101, 112 (S.D.N.Y. 2008) (citing Belt Painting in support of conclusion that New York law holds that there is "ambiguity in 'pollution' clauses when applied to non-environmental pollution"); Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co., 344 F. Supp.2d 915, 918-19 (S.D.N.Y. 2004)

14

(holding, <u>inter alia,</u> that because pollution exclusion language is so broad, it "cannot literally mean what it says," creating an ambiguity as to the meaning of the term "pollutant").

As demonstrated, New York and Texas courts have interpreted substantially identical pollution exclusion clauses to reach different results. The Texas Supreme Court's decision in <u>National Union</u> is thus completely at odds with that of the New York Court of Appeals in <u>Belt Painting</u>, creating a clear conflict of laws. Plaintiff, however, in an effort to show that there is no conflict, seeks to harmonize New York and Texas law. Upon close scrutiny of Plaintiff's arguments, as discussed below, the court finds no such harmony between the two states' decisions.

First, Plaintiff seizes upon language in <u>Certain Underwriters</u> in support of the argument that Texas law is somehow flexible or "unsettled," on the meaning of pollution exclusion clauses. The language relied upon notes the potential for difficulty in applying the clause "when the damage-causing incident involves a commonly used chemical or when only a slight amount of substance is released." <u>Certain Underwriters,</u> 112 F.3d at 188. Such language does not, as Plaintiffs argue, create an ambiguity in Texas law. Instead, the language refers only to the court's general agreement with an observation of the Seventh Circuit Court of Appeal noting that the clause would not bar coverage when, for example, a plaintiff is injured after slipping on a spilled container of a commonly used chemical-containing product such as "Drano." <u>Id.</u> Agreeing that such injuries would not be barred by the pollution exclusion clause, the Fifth Circuit noted that a "common sense" approach is necessary to avoid an absurd result. <u>Id.</u>; <u>see Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,</u> 976 F.2d 1037, 1043 (7th Cir.1992). This observation in no way detracts from the clear decision in <u>National Union</u> holding the clause unambiguous in

all but the hypothetical scenario envisioned by the Seventh Circuit. In any event, <u>Certain Underwriters</u> is distinguishable because there, unlike here, the pollution exclusion clause did not define the term "pollutant." <u>See</u> <u>Noble Energy</u>, 529 F.3d at 647.

In an additional attempt to show the lack of a conflict between the laws of Texas and New York, Plaintiff cites to <u>Evanston Ins. Co. v. Adkins</u>, 2006 WL 2848054 (N.D. Tex. 2006). <u>Adkins</u> is cited to support Plaintiff's argument that Texas employs an interpretation analysis similar to that used by New York courts. In <u>Adkins</u>, a federal district court in Texas held that application of the pollution exclusion clause required a three part analysis, including a broad determination of whether it is "reasonable" to apply the clause in any particular case. <u>Adkins</u>, 2006 WL 2848054 *6. Announcing this test, the <u>Adkins</u> court cited to <u>Certain Underwriters</u>, but otherwise relied exclusively on cases decided outside of the State of Texas. Those cases were decided in the States of Massachusetts, Indiana, Oregon and Wisconsin. <u>See</u> <u>id</u>.

The thin reed upon which the <u>Adkins</u> court declared some sort of a "general reasonableness" test does not put Texas law in accord with that of New York. Nor, in this court's view, does Plaintiff's broad interpretation of <u>Adkins</u> represent the law of the State of Texas as pronounced by its highest court. Instead, that court, speaking to what is the "last word" in Texas law has held quite clearly that no such general test of reasonableness applies. Indeed, as noted, in all but the most absurd cases, Texas law holds that the total pollution exclusion clause is unambiguous in barring coverage in both traditional environmental and other personal injury actions. <u>Accord</u> <u>Zaiontz</u>, 87 S.W.3d at 573-74 (rejecting claim that "common sense" approach requires case-specific interpretation of pollution exclusion on ground that <u>National Union</u> holds that the absolute pollution exclusion clause is neither patently nor latently ambiguous).

16

Moreover, even if the "common sense" interpretation of the clause advanced by Plaintiff were required in some limited category of cases, that case is not presented here. An unambiguous application of the clause in this case will not lead to the absurd result envisioned by the Fifth Circuit in Certain Underwriters, and in no way detracts from that court's unequivocally strict interpretation of the total pollution exclusion clause. As stated therein, the clause unambiguously bars coverage where injuries follow a discharge of pollutants that, while not amounting to a widespread environmental disaster, is nonetheless greater than that following an isolated discharge of a commonly-used household product.

IV.    Conflicts Analysis

    A.    There is A Conflict of Laws

    In light of the foregoing case law and analysis, the court holds that there is a clear conflict between the views of the courts in the State of Texas and those of New York as to the application of the total pollution exclusion clause. Texas law holds such clauses to be unambiguous in all but the narrowest of cases, where such application would be "absurd." New York law, on the other hand, holds the clauses to be ambiguous when applied in the context of personal injury lawsuits stemming from non-environmental discharges. Other courts have recognized this disagreement, and agree with this court's conclusion, placing Texas among those states holding the clause to be unambiguous, and New York among those states reaching the opposite conclusion. See, e.g., Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc., 474 F. Supp.2d 779, 792-73 n. 5 and 6 (E. D. Va. 2007).

    In view of the court's holding that there is a clear conflict between the laws of the States of Texas and New York as to application of the total pollution exclusion clause, the court turns to

17

consider which state law should apply here.

B.    <u>Which Law To Apply</u>

In accord with the legal principles set forth above, the court considers the location of the risk to be insured, as well as general principles of conflicts of laws to determine the proper law to apply.

In support of the argument that the parties understood New York to be the location of the covered risk, Lapolla notes that the Underlying Action was commenced in New York, by New York residents, seeking compensation for a New York-based occurrence. While these factors might be relevant to a choice of law question on the merits of the Underlying Action, they are far less dispositive in this coverage litigation where the court considers the location of the risk insured by the Policies.

Here, the New York contacts relied upon by Plaintiffs would support the argument that New York was the location of the insured risk if Lapolla did business only in New York, and the Policies covered only actions arising therein. <u>See, e.g.</u>, <u>Lumbermans Mutual</u>, 2009 WL 137055 *5. In such a single policy/single place of occurrence coverage dispute, the court properly assesses the competing states' contacts with the underlying litigation as a factor influencing the choice of law question. <u>Id</u>. That, however, is decidedly not the case here. Instead, as noted, the Policies were written to cover liability claims made against Lapolla anywhere in the world. Such claims are presently being pursued not only in the Markey Lawsuit, but are being litigated in other state courts, including several in the state of Florida. Like the Markey Lawsuit, the Florida cases allege injury attributable to Lapolla's SPF insulation product. The worldwide coverage afforded by the Policies, coupled with the presence and continuing possibility of lawsuits in a

18

variety of jurisdictions, make it impossible to state that the parties intended a single state such as New York to be their understanding as to the location of the risk. See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 33 (1st Dep't. 2006).

Where, as here, the spread of risk among world-wide jurisdictions makes it impossible to state a single state as the location of the risk to be insured, New York courts generally consider the insured's domicile as the place of risk, and apply the law of that state. Wausau Business Ins. Co. v. Horizon Administrative Services LLC, 803 F. Supp.2d 209, 214 (E.D.N.Y. 2011). While the court agrees that there is no "bright line" rule requiring application of law of the insured's domicile, that factor remains important, even while the court considers other choice of law factors, including the policies of other states and the parties' connections thereto. See Lumbermen Mutual, 2009 WL 137055 * 5. Where consideration of such other factors however, do not point to the laws of any state in particular, application of the law of the insured's domicile allows the court to choose the law of a single jurisdiction, and thereby further the interests of the parties and their expectations. Specifically, this approach advances the parties' expectations by choosing the law of one jurisdiction to apply to all lawsuits. Application of the law of the insured's domicile promotes "certainty, predictability and uniformity of result" and, perhaps more importantly, guards against the likelihood that a single policy will be subject to different interpretations under the laws of different states. See Foster-Wheeler, 822 N.Y.S.2d at 34-3530 (quotations and citations omitted).

Applying the foregoing principles to this case, the court reiterates that the risks insured by the Policies are worldwide. While Lapolla has been sued in New York, it has also been named as a defendant in cases commenced in other jurisdiction that allege claims similar to those raised

here in New York. The Policies apply to all of those lawsuits, and it is impossible to state that a single state was the location of the insured risk.

Turning to other factors, , the court notes that Lapolla's domicile is in the State of Texas. The Policies note their issuance in that state, and refer specifically to Texas law. There is no state, other than Texas, with a similar connection to the insured or the Policies. The court therefore holds that Texas law is the appropriate choice in this matter. Applying that law, the court turns to the merits of the motion.

V.    Disposition of the Motion

The Policies here broadly exclude all claims for "bodily injury" or "property damage" that would not have occurred but for "the actual, alleged, or threatened discharge . . . release or escape" of "pollutants." The Policies could scarcely be broader in their definition of "pollutants" which includes, inter alia, any "gaseous" "irritant or contaminant," including "vapor" or "fumes." As to relief sought, the Policies exclude coverage for the cost and expenses for monitoring or remediation costs.

The allegations of the Markey Lawsuit are centered on allegations of personal and property damages attributable to the "off-gassing" of Lapolla's SPF product. That lawsuit refers to the nature of the gas expelled, describing it as a toxic irritant. Plainly, these allegations refer to an alleged discharge of a "gaseous" "irritant," "vapor" or "fume," and thus fall squarely within the Policies' language of exclusion. Also squarely within the language of exclusion are the Markeys' requests for relief, which include requests for ongoing monitoring and remediation. As demonstrated above, Texas courts construing pollution exclusion clauses that are either identical, or strikingly similar to those presented here, have held such clauses to be clear and unambiguous

in their application to exclude coverage. <u>National Union</u>, 907 S.W.2d at 518. In such cases, extrinsic evidence of intent will not be considered. <u>Id</u>. at 521-22. Application of Texas law compels only one conclusion. Coverage for the Markey Lawsuit is excluded from the Policies.

## CONCLUSION

Defendant's motion to dismiss is granted. This court declares that Defendants have no duty to defend or indemnify Plaintiff in connection with the case of <u>Markey v. Lapolla Industries, Inc.</u>, No. 12-4622 (JS), a matter now pending in this court. The Clerk of the Court is directed to terminate the motion filed under docket entry number 21 in this matter, and to thereafter close the file in this case.

SO ORDERED:

_____ /s/ _____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
August 19, 2013

21